# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 14-1006V

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
CHELSEY ATNIP,     \*
    \*    Filed: July 6, 2016
         Petitioner,    \*
    \*
         v.    \*    Attorney's Fees and Costs;
    \*    Dismissal Without Hearing;
SECRETARY OF HEALTH     \*    Reasonable Basis; Reasonable
AND HUMAN SERVICES,     \*    Fees.
    \*
         Respondent.    \*
    \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*David C. Richards*, Christensen and Jensen, P.C., Salt Lake City, UT, for Petitioner.

*Alexis B. Babcock*, U.S. Dep't of Justice, Washington, DC, for Respondent.

**DECISION GRANTING IN PART REQUEST FOR ATTORNEY'S FEES AND COSTS**[1]

On October 17, 2014, Chelsey Atnip filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioner alleged that she suffered from an immediate anaphylactic reaction, and subsequently developed Postural Tachycardia Syndrome ("POTS"), mastocytosis, gastroparesis, and / or other conditions, as a result of her October 21, 2111, influenza ("flu") vaccination. *See* Petition at 1 (ECF No. 1). After Ms. Atnip was unable to obtain expert support for her claim, she requested a ruling on the record, and by decision dated February 18, 2016, I dismissed the case for failure of proof. ECF No. 25.

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C.A. § 300aa-10 through 34 (2012)) ("Vaccine Act" or "the Act"). Individual sections references hereafter will be to § 300aa of the Act.

Petitioner has now requested an award of attorney's fees and costs in the combined amount of $37,676.36. Motion for Award of Final Attorney's Fees and Reimbursement of Costs, dated May 25, 2016 (ECF No. 30) ("Fees App."). Respondent states that the decision to grant fees in this case lies with my discretion, but also asserts that the sum requested is beyond what is appropriate for a similarly-situated matter. For the reasons stated below, I grant in part Petitioner's request, awarding $28,837.43 in fees and costs.

**Procedural History**

As noted above, the case was filed in October 2014. Pet. at 1. The petition expressly stated that Ms. Atnip suffered an anaphylactic reaction, and then developed Postural Tachycardia Syndrome ("POTS") and other sequelae in reaction to the flu vaccine she received in October 2011. *Id.* at 1-2. Although Petitioner alleged that she experienced an immediate allergic reaction, her other symptoms did not begin until November 23, 2011. *Id.* at 2. She attempted to manage her increasingly-distressful symptoms over the next six months, before a series of emergency room visits beginning in May 2012. *Id.* at 4. POTS was first proposed as a possible diagnosis in August of that same year. *Id.* at 5.

The history of counsel's representation of Ms. Atnip bears on the present fees request. Her counsel, Mr. David Richards, began work on the case in December 2013 – ten months before the case was filed. *See generally* Billing Records, attached as Tab C to Fee App. at 11-25.[3] Prior to the date of the petition's filing in October, Mr. Richards (the only attorney performing work on the matter) billed 23.7 hours to the matter. *Id.* at 12-16. A substantial amount of this work was devoted to preparing the petition and cite-checking the medical records. *Id.* at 15-16.

Overall, this does not reflect a significant effort on counsel's part to evaluate the case's strength – especially given the amount of time before Ms. Atnip's claim might have been time-barred at the earliest (October 2014) under the Act's three-year limitations period. During the same time period, however, a paralegal performed 57.8 hours of work. *Id*. Much of this time was devoted to gathering medical records – reflected in the fact that Petitioner filed a substantial amount of these records a month after the case's initiation. *See* ECF No. 7 (Notice of Intent to File on Compact Disk), dated Nov. 20, 2014.

In the months after the matter's filing, Petitioner completed the process of records gathering, but was unable to file a statement of completion until June 2015. *See* June 29, 2015 Statement of Completion (ECF No. 21). Respondent filed her Rule 4(c) Report in August (ECF No. 22) contesting Ms. Atnip's ability to meet her burden of proof in establishing causation. Thereafter the parties participated in a status conference on September 8, 2015, at which time I set

---

[3] Ms. Atnip did not separately file exhibits to the Fee Application as attachments. Counsel should do so in the future. *See* Vaccine ECF Rules, Section IV, Filing Requirements, Paragraph 10(a).

December 11, 2015, as the deadline for Petitioner's expert report. That deadlines was missed, and then (in response to my Order demanding compliance with the filing deadline (ECF No. 23)), Petitioner filed a motion requesting a decision dismissing the case, because she could not obtain an expert opinion supporting the claim. Motion for Decision, dated Dec. 21, 2015 (ECF No. 24). I granted the motion, dismissing the matter by decision dated February 18, 2016. *See* ECF No. 25.

**Fees Application**

Ms. Atnip filed her motion for fees in May of this year. *See generally* Fees App. In it, she request an award of $17,940.00 in fees reflecting the work performed on the case by Mr. Richards, at a rate of $325 per hour. Tab C to Fees App. at 23. She also requests that two paralegals (Ramona Gray and Kirstin Jensen-Beutler) be reimbursed at the rate of $125 per hour for a combined total of 116.40 hours of work. *Id*. Finally, she seeks reimbursement of $5,161.36 in other costs, which include copying, filing costs, and medical records charges. *Id*. at 24-25. That figure also includes $2,015.00 in expert costs pertaining to the services of Dr. Marcel Kinsbourne (billed at $300 or $500 per hour, depending on the nature of the work performed), and $1,600.00 in fees incurred by experts at Immunology, Inc. *Id*. at 26; *see also* Tab D to Fees App. at 45-46.

Respondent filed a pleading in reaction to the fees application on June 13, 2016. ECF No. 31 ("Opp."). She expressed no objection to the payment of fees and costs in this case despite its voluntary dismissal. Opp. at 2. She also disclaimed any role in determining what the proper sum of fees and costs should be, but suggested that, based on experience with similar cases, a reasonable total range for the award should be between $15,000 and $19,000. *Id.* at 2-3.

Petitioner filed a reply supporting the fees application on June 14, 2016. ECF No. 32 ("Reply"). She stressed Mr. Richards's experience in Vaccine Program litigation, and questions the substance behind Respondent's proposed range for awards in similar cases. Reply at 2. She also invoked the detailed nature of the Petition as reflecting the complexity of analyzing her claim, as well as the magnitude of records that had to be reviewed both before and after the Petition's filing. *Id.* at 3-4. And she underscored the fact that the case was not overstaffed. *Id.* at 4.

**ANALYSIS**

**I.  Attorney's Fees**

I have in prior relevant decisions set forth at length the relevant legal standards governing attorney's fees awards in unsuccessful cases, and in particular the criteria to be applied when determining if a claim possessed "reasonable basis." *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, slip op. at 4-5 (Fed. Cl. Spec. Mstr. May 26, 2016); *Gonzalez v. Sec'y of*

3

*Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015).[4] Here, Respondent does not dispute that a fees award is appropriate under the Act (Opp. at 2) – thus conceding that sufficient reasonable basis existed for the assertion of the claim through the time of its dismissal. I concur with that conclusion. Accordingly, what is left to determine is the proper magnitude of the award.

      A.      <u>Attorney's Hourly Rate</u>

Whether a fee award is made on an interim basis or after a case's conclusion, the requested sum must be "reasonable." Section 15(e)(1). It is for the special master to evaluate and decide whether this is the case. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). To this end, special masters may in their discretion reduce attorney hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

Determining the appropriate amount of an award of reasonable attorney's fees is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id*. at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. denied*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, DC for Vaccine Program cases). *Avera*, 515 F.3d at 1348. After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella*, 86 Fed. Cl. at 205-06. This reasonableness inquiry involves consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.

---

[4] In short, petitioners must demonstrate, through some evidentiary showing and in light of the totality of the circumstances, that their claim had a reasonable basis for being pursued. The nature and extent of counsel's investigation into the claim's underpinnings, both before and after filing, is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.*, No. 09176, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)).

In some cases, determining the proper hourly rate for a particular attorney requires consideration of whether there is a significant disparity between the forum rate applicable to the Vaccine Program generally and the geographic forum in which the attorney practices, in order to adjust the rate used if the local rate is lower. *Avera*, 515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). Significantly for purposes of the present discussion, the *Davis* case involved attorneys practicing in Salt Lake City, Utah – Mr. Richards's place of business. *Davis*, 169 F.3d at 760 (characterizing Utah as "the less expensive legal market" in comparison to Washington, DC).

Ms. Atnip's fees request seeks an award calculated on the basis of a $325 hourly rate for Mr. Richards's services. I have not found any prior decisions addressing what his rate should be, and Respondent for her part does not specifically object to it. Petitioner has offered some witness support for the requested rate, in the form of affidavits from both Mr. Richards and another Salt Lake City legal practitioners (*see* Tabs A and E to Fees App.), but no case law defending the rate's propriety.

It is not disputed that Mr. Richards is a seasoned attorney with particular experience in the Vaccine Program. *See* ECF No. 30 at 6-7 (Tab A). He therefore should be compensated at the higher end of any range applicable to similarly-situated attorneys. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) (discussing in-forum hourly rate ranges for attorneys of different levels of experience). But, in light of *Davis*, he should not receive an in-forum rate in this case.

There are many other decisions involving experienced Program practitioners who, like Mr. Richards, practice law in less-populated states in the western United States. Such counsel have consistently been found not entitled to the higher forum rate. *See, e.g.*, *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1354 (Fed. Cir. 2011) (affirming a decision where a 46% to 60% difference in the rates paid Mr. Richard Gage – a Wyoming attorney – was deemed sufficiently significant for purposes of the *Davis* exception to qualify him as out-of-forum); *Masias v. Sec'y of Health & Human Sevs.*, 634 F.3d 1283 (Fed. Cir. 2011) (experienced Wyoming attorney entitled only to non-forum rate); *Kuttner v. Sec'y of Health & Human Servs.*, No. 06-195V, 2009 WL 256447, at *9 (Fed. Cl. Spec. Mstr. Jan. 16, 2009) (awarding Mr. Curtis Webb, an attorney practicing in Twin Falls, Idaho, the local rate under *Davis* of $240 per hour for work performed in 2008). These are persuasive and well-reasoned decisions, and the logic that led the special masters deciding them to award local rates is compelling herein.

Based on the above, I find that Mr. Richards should be paid what would constitute a non-forum, local rate for his services in this case. The requested amount, $325 per hour, is too high in

light of the above-referenced decisions – but only slightly. In a recent decision having some relevance herein, I awarded Richard Gage – a similarly-situated attorney with significant Vaccine Program experience, but who practices in Cheyenne, Wyoming – the rate of $300 per hour for work performed in 2015, adjusted downward for earlier years. *See Auch v. Sec'y of Health & Human Servs.*, No. 12-673V, *slip. op.* at 16-17 (Fed. Cl. Spec. Mstr. May 20, 2016) (awarding between $290 and $300 for work performed between 2012 and the present). I find that Mr. Richards's Program experience and overall experience is consistent with Mr. Gage's, and suggest to me that (even though he practices in a non-forum location), he should receive the same rate for 2015 work.

The 2015 rate cannot be applied retroactively to work done in previous years, however, as doing so would effectively be equivalent to charging the government interest. *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *17-19 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for review den'd*, 2011 WL 6292218 (Fed. Cl. Nov. 22, 2011). As a result, employing the CPI Calculator,[5] the reasonable hourly rate for Mr. Richards in 2015 should adjusted for work performed in 2014 and 2013. Mr. Richards will therefore receive compensation at a rate of $299.64 per hour for work performed in 2014; $294.86 per hour for work performed in 2013; and $304.07 for work performed in 2016 (adjusted upward).

### B.  Hours Expended by Petitioner's Attorneys

I have previously discussed the legal standards relevant to evaluating whether attorney time devoted to a matter was reasonably spent. *Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *11-12 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). It is within my discretion to determine whether the time devoted to the matter was reasonable regardless of Respondent's position, and even where Respondent has not specified objectionable components of a fees request, such as a category of work deemed inefficient or unnecessary. *Sabella*, 86 Fed. Cl. at 208-09.

Here, although I have found that a fees award is appropriate, I also find that some of the time devoted to the case was unreasonably spent. In particular, my review of the billing record reveals that Mr. Richards spent an excessive amount of time preparing the petition itself. A Vaccine Act petition should be supported by evidence (as was the case here), but it need not recite in detail, or repeat, information contained in that evidence. This is especially so when a case is worked up for ten months before filing, and where paralegal time on the case was extensive, but the claim's viability was promptly determined after consultation with experts. Mr. Richards billed a total of 15.9 hours preparing the petition, and checking it against the records (which the billing

---

[5] *CPI Inflation Calculator*, U.S. Bureau of Labor Statistics, http://data.bls.gov/cgi-bin/cpicalc.pl (last accessed May 13, 2016) ("CPI Calculator").

invoices measure in width). ECF No. 30 at 15-16 (Tab C). Such work was unnecessary in this case, and did not demonstrably serve its adjudication (especially since it was expert input that ultimately determined its course, and not the accuracy of the petition's factual allegations). I therefore reduce time devoted to the Petition's preparation by approximately 50 percent, or 7.9 hours.

More generally, the time devoted to the matter is somewhat high in light of the result (dismissal). In determining the reasonability of attorney time devoted to a Vaccine Act claim, special masters necessarily engage in a retrospective analysis, evaluating the work performed on a matter against its effectiveness, keeping in mind counsel's overall efficiency in handling the matter. Here, counsel had the case for ten months before filing, and then had no discussions with potential experts until the early fall of 2015, nearly a year after filing. Once those conversations were held, it took no time at all to reach the conclusion that the claim was not viable. Even if counsel did not possess **all** records necessary to evaluate the case as of the day of filing, the expert consultation should have occurred far earlier. Certainly Petitioner has not established that experts could not have been contacted sooner.

Attorneys in the Program should be encouraged to act more expeditiously on behalf of their clients, especially since they can in most instances anticipate some remuneration for their work even if the claim cannot be successfully prosecuted. An across-the-board, twenty percent reduction in time billed after filing is therefore reasonable under the circumstances.

Accordingly, I award attorney's fees as follows:

(a) 2013: .8 hrs x $294.86 = $235.89;

(b) 1/1/2014 – 10/17/2014: (23.7 hrs – 7.9 hrs) x $299.64 = $4,734.31;

(c) 10/18/2014 – 12/31/2014: .8 x 3.4 hrs x $299.64 = $815.02;

(d) 1/1/2015 – 12/31/2015: .8 x 26.2 hrs x $300 = $6,288.00; and

(e) 1/31/2016: .8 x 1.1 hrs x $304.07 = $267.58;

**Total Attorney's Fees Awarded: $12,340.80.**

**II.    Costs**

There are three categories of costs requested herein: paralegal costs, litigation-related costs, and expert costs. First, Petitioner requests reimbursement for the services of two paralegals at a rate of $125 per hour. Like attorney's fees, reasonable paralegal fees are calculated using the lodestar method. *See Dunham v. Sec'y of Dep't of Health & Human Servs.*, 18 Cl. Ct. 633 (Nov. 22, 1989). The petitioner bears the burden of demonstrating the reasonableness of the paralegal's hourly rate and the reasonableness of the number of hours expended on litigation. *Id.*

The requested $125 hourly rate is above what has been awarded paralegals in other non-forum locales. *See, e.g.*, *Dingle v. Sec'y of Health & Human Servs.*, No. 08-579V, 2014 WL 630473, at *3 (Fed. Cl. Spec. Mstr. Jan. 24, 2014) (rate of $100 per hour reasonable for paralegals working in Cheyenne, Wyoming); *Lawrence v. Sec'y of Health & Human Servs.*, No. 09-0435V, 2013 WL 3146775, at *4 (Fed. Cl. Spec. Mstr. May 28, 2013) (same). Indeed, it approaches the top forum rate – which is not even awarded consistently, depending upon the particular location. *McCulloch*, 2015 WL 5634323, at *21 (top forum rate of $135 an hour for paralegal work); *see also Tieu Binh Le v. Sec'y of Health & Human Servs.*, No. 07-895V, 2014 WL 4177331, at *3, 8 (Fed. Cl. Spec. Mstr. July 31, 2014) (awarding $95 per hour for paralegals in Dallas-Fort Worth, Texas, an in-forum jurisdiction).

Accordingly, and consistent with my determination that Salt Lake City is an out-of-forum jurisdiction subject to the *Davis* exception, I find a rate of $100 per hour to be appropriate for all paralegal work performed in 2015. Employing the CPI Calculator, the hourly rate for paralegal work performed in 2015 should adjusted downward for work performed in 2014[6] – but upward for 2016. Accordingly, paralegals involved in this case will receive $100 per hour for work performed in 2014 (since there was little inflation in that temporal period), but $101.36 per hour for work performed in 2016.

With respect to paralegal time, Respondent offers no specific objections to the reasonableness of any particular time entries. Although I have reduced the amount of attorney time that I will award in this case, I will not also reduce paralegal time devoted to it. Records were filed with reasonable diligence in the matter, and sufficient efforts made to obtain missing information. Counsel made an appropriate use of paralegal time on matters not warranting attorney attention. And from my review of the billing records, it does not appear to me that paralegal time was wasted in this case. I will therefore award requested paralegal costs in their entirety. Thus, paralegal costs are awarded as follows:

2014 - 2015: 116.4  x $100 = $11,640;

---

[6] No paralegal time was incurred before 2014.

2016: .2 x $101.36 = $20.27;

**Total Paralegal Costs Awarded: $11,660.27.**

I reach the same conclusions with respect to the litigation costs requested herein, which include the expenses of document gathering, photocopying, and online legal research. The total sum requested (approximately $1,500) is facially reasonable, I have identified no particular cost categories that are objectionable, and Respondent has not otherwise specified any category of costs as improper.

Finally, Petitioner requests reimbursement of expert costs incurred in utilizing the services of Dr. Marcel Kinsbourne ($2,015) and Immunology, Inc. ($1,600) (apparently an expert consultancy operated by Drs. Vera Byers and Alan Levin). *See* Tab D to Fees App. at 45-46. Dr. Kinsbourne charged rates of $500 and $300 per hour, depending upon the nature of the work performed. *Id.* at 45. The other experts consulted in this case charged a flat rate of $400 per hour. *Id.* at 46.

Petitioner has not adequately explained why the requested hourly rates are reasonable, as she is obligated to do in requesting expert-related costs. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994); *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002). This is true with respect to Dr. Kinsbourne in particular. *Dimatteo v. Sec'y of Health & Human Servs.*, No. 10-566V, 2014 WL 1509320, at *8 (Fed. Cl. Spec. Mstr. Mar. 27, 2014) (discussing Dr. Kinsbourne's use of varying rates, and the fact that he is inconsistently awarded $500 per hour in other Program cases). However, the overall amount requested is not excessive, and she has mostly established that the work performed in this case by the experts assisted her in reaching the determination not to proceed with the claim (even if that help should have been sought far earlier). *See, e.g.*, Tab F to Fees App. at 55.[7]

In order to effect justice, I will make the following adjustments to the requested expert costs. I will award the 1.3 hours of time billed to the matter by Dr. Kinsbourne at his lower, $300 hourly rate in its entirety. But all remaining time Dr. Kinsbourne billed to this case shall be compensated at the rate of $400 per hour, to account for the fact that no experts had to perform more than a consultative role in the matter. *Simon v. Sec'y of Health & Human Servs.*, No. 05-941V, 2008 WL 623833, at *8 (Fed. Cl. Spec. Mstr. Feb. 21, 2008) (differentiating services of a testifying expert from one who merely consults in a case, and compensating the latter at a lower rate).

---

[7] I note that the Immunology, Inc. invoice includes a request for $400 for one hour of time billed "11/5/2016" – a date in the future – and that it provides no description of the work performed. Tab D to Fees App. at 46. I will assume that the date reference is a typographical error, but admonish counsel in the future to review invoices with care when seeking costs reimbursement.

Thus, the expert costs shall be awarded as follows:

Dr. Kinsbourne: ($300 x 1.3 = $390) + ($400 x 3.25 = $1,300) = $1,690; and

Immunology, Inc.: $400 x 4 = $1,600.00;

**Total Expert Costs Award: $3,290.00**

## CONCLUSION

Based on all of the above, the following chart sets forth the total calculation of Petitioner's fees and costs award:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Mr. Richards's Fees | $17,940.00 | $5,599.20 | $12,340.80 |
| Expert Costs | $ 3,615.00 | $325.00 | $3,290.00 |
| Paralegal Costs | $14,575.00 | $2,914.73 | $11,660.27 |
| Litigation Costs | $ 1,546.36 | None | $ 1,546.36 |

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of attorney's fees and costs awards, and based on the foregoing, I GRANT IN PART Petitioner's Motion for Attorney's Fees and Costs, awarding $28,837.43 in fees and costs. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court SHALL ENTER JUDGMENT in accordance with the terms of this decision.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master